# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LEEANDREW LUCERO,

       Plaintiff,

v.                                               CV 15-588 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Leeandrew Lucero applied for supplemental security income on April 25, 2011, based on a learning delay, attention deficit hyperactivity disorder, anxiety, and allergies. (Administrative Record "AR" 54.) After his application was denied at all administrative levels, Lucero filed his Motion to Reverse and Remand for a Rehearing. (Doc. 19.) The Commissioner of the Social Security Administration ("SSA") filed a response (Doc. 21) and Lucero filed a reply (Doc. 22). For the reasons explained below, I deny Lucero's motion to remand and affirm the decision of the Commissioner.

## STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

### SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 416.920(a)(4),  & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of

performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(f). If a claimant is

not prevented from performing his past work, then he is not disabled. 20 C.F.R. § 416.920(f).

The claimant bears the burden of proof on the question of disability for the first four steps, and

then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S.

137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot

return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that

the claimant is capable of performing other jobs existing in significant numbers in the national

economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51

(10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Lucero is a thirty-six-year-old man with a high school education. (AR 54-55.) Lucero

previously worked as a pizza-maker, pallet repairman, repo-man, and as a laborer on a stucco-

watering crew. (AR 163.) Lucero claims disability beginning on September 13, 2007 (AR 55),

but there is no evidence of record until April 19, 2011 (AR 258).

I do not address everything in the record, but rather target my factual discussion to the

facts necessary to the disposition of this case.

Medical records show that Lucero started treatment at First Choice Community Health on

April 19, 2011—two days after starting Suboxone treatment to replace heroin use. (AR 258.)

Lucero reported that he had been using heroin, had never used intravenous drugs, and had no

history of depression or anxiety. (*Id.*)

Lucero's girlfriend filled out a Function Report on his behalf on May 16, 2011, in which

he reported living in a home with his grandparents and working under the table for his brother.

(AR 152.) Lucero indicated that he had been fired from five previous jobs for being too slow and

requiring repeated instructions. (*Id.*) Lucero asserted that he had no problems with personal care, prepared his own meals, did house and yard work, went outside several times a day, did his own shopping, and enjoyed fishing, drawing, and playing Xbox. (AR 153-56.) Lucero also reported that he needed reminders for doctor's appointments, did not drive because of a 2008 driving-related incident, had a hard time with numbers or counting money, needed help reading and understanding paperwork, and did not really like to socialize. (*Id.*) Lucero alleged hearing problems, difficulty remembering and concentrating, difficulty staying on task, and difficulty following instructions. (AR 157.) Lucero wrote that he could pay attention for about twenty minutes, but only if he paid attention to something he liked. (*Id.*)

Eusilvia Lucero, Lucero's mother, filled out a Third-Party Function Report on June 21, 2011. (AR 180.) His mother reported that Lucero lived with his girlfriend and her father, who had been providing for his basic needs for years. (AR 181.) Ms. Lucero opined that attention deficit disorder had always hindered Lucero and made him very slow to perform tasks. (AR 181-82.) Ms. Lucero wrote that Lucero feels he is stupid and cannot learn or get things done. (AR 182.) She stated that Lucero does not do yard work because of his allergies and has always been antisocial. (AR 183-84.) Ms. Lucero indicated that Lucero has always had trouble completing tasks and concentrating, and that he forgets parts of written and spoken instructions. (AR 185.)

Lucero, aided by counsel, filled out a second Function Report on June 21, 2011, in which he reported living with his grandparents and a cousin. (AR 188.) Lucero described his daily activities as waking up between nine and ten a.m., going to the bathroom, eating breakfast that is prepared for him, watching television or going outside, drawing with pencil and paper, maybe going for a walk and picking up cans, coming home and watching more television, waiting for his mother to cook dinner, watching more television after dinner, and going to bed between 11

p.m. and midnight. (AR 188, 195.) Lucero stated that he does not sleep well, has insomnia, and experiences anxiety and panic attacks throughout the day. (AR 189, 195.) Lucero helped around the house by vacuuming, cleaning the house, raking or sweeping the sidewalk, and doing laundry. (AR 190.) He indicated that he has "no problem" handling changes in routine. (AR 194.)

New Mexico Disability Determination Services ("DDS") sent Lucero for a psychological consultative examination with Louis Wynne, Ph.D., on July 29, 2011. (AR 268.) Dr. Wynne conducted a structured interview, reviewed Lucero's medical records as of that date, and performed a mental status examination. (*Id.*) Lucero's girlfriend drove him to the session and accompanied him throughout the interview. (*Id.*) Dr. Wynne noted that Lucero "maintained good eye contact, related easily, and was cooperative," with a flat affect and congruent, dysphoric mood. (*Id.*) Lucero's fund of information was lower than average, but his ability to abstract was unimpaired. (AR 269.) Lucero demonstrated limited judgment based on answers to Wechsler Adult Intelligence Scale ("WAIS") type comprehension questions. (*Id.*) Lucero was unable to spell a common five-letter word, but his short-term memory was not impaired. Lucero exhibited impaired performance of operations in simple mental math. Dr. Wynne estimated Lucero's current and preadolescent intelligence as below average. (*Id.*) While Lucero could read and understand basic instructions, he presented with an impaired ability to present a plausible, detailed, and comprehensive personal history. (AR 269-70.) Dr. Wynne described Lucero's ability to concentrate and persist at simple work tasks as "moderately impaired," and further noted that Lucero "could not interact well with the general public, his coworkers, or his supervisors, and he would have difficulty adapting to changes in the workplace." (AR 270.) Dr. Wynne diagnosed Lucero with alcohol dependence in short-term remission, cannabis abuse,

polysubstance abuse/heroin, inhalants/in remission, borderline intellectual functioning, and rule-out mild mental retardation. (*Id.*) Dr. Wynne assessed Lucero with a GAF of 42.[1] (AR 271.)

DDS non-examining consultant, Donald Gucker, Ph.D., evaluated Lucero's file on August 19, 2011. (AR 54.) Dr. Gucker found that Lucero suffers from the non-severe medically determinable impairments of substance addiction disorders and mental retardation, resulting in mild limitations on activities of daily living, mild difficulties with social functioning, one or two episodes of decompensation, and moderate difficulties maintaining concentration, persistence, or pace. (AR 58-59.) For Lucero's mental RFC, Dr. Gucker found marked limitations in Lucero's ability to carry out detailed instructions. (AR 61.) Dr. Gucker found moderate limitations in Lucero's ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday without interruptions from psychologically based symptoms; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (AR 60-62.) Dr. Gucker found no limitation in Lucero's ability to: make simple work-related decisions; ask simple questions or request assistance; get along with coworkers or peers;

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between forty-one and fifty is assessed when the patient is believed to have "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Lucero's mental health providers used this scoring method.

maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; and travel to unfamiliar places or use public transportation. (*Id.*)

On September 29, 2011, Lucero filled out another Function Report, detailing largely the same information as the June 2011 report. (AR 212-17.) Lucero reported living with his grandfather and his mother and noted that "all mental functions [are] affected by [his] inability to focus and concentrate due to borderline mental functioning." (AR 217.)

Beginning in August 2011, Lucero reported anxiety and trouble sleeping to Tasha Ludwick, DO, his primary provider at First Choice Community Healthcare. (AR 282; *see also* AR 281, 288-90, 292-94, 316.) Lucero reported that he was using alcohol, tobacco, and marijuana, while taking hydroxyzine for anxiety and Suboxone to help wean him off heroin. (*See, e.g.*, AR 282.) Lucero requested a tetanus shot from Dr. Ludwick on April 12, 2012, because he was working around nails. (AR 288.)

DDS sent Lucero for a second consultative examination on May 19, 2012, this time with Mark Simpson, Psy.D. (AR 300.) Dr. Simpson interviewed Lucero and conducted testing consistent with the WAIS Fourth Edition. Lucero reported living between his mother's home and his girlfriend's home. Lucero arrived on time and exhibited no difficulties with balance, walking, or sitting, despite obvious obesity. Lucero sat for the two-hour examination. Dr. Simpson noted that Lucero read the Consent to be Evaluated/Privacy Practices "line by line. He then proceeded to sign it." (*Id.*) Lucero complained of learning difficulties, anxiety, and disturbed sleep, with a history of anxiety and insomnia. Lucero sought help in the past, but never took the prescribed medication or followed up with healthcare providers. Lucero worked for his brother during the summer months and spent the last month looking for a job. (AR 301.) At the time of the

interview, Lucero was taking bupropion and hydroxyzine for anxiety and Suboxone to assist with heroin recovery. On mental status examination, Lucero was oriented, mildly depressed and mildly anxious, with blunted affect, below average intelligence, and mild-to-moderate memory deficits. (AR 302.)

Dr. Simpson administered ten subtests as part of the WAIS. Dr. Simpson found Lucero's general cognitive ability within the borderline range of intellectual functioning; verbal reasoning in the low-average range; nonverbal reasoning in the borderline range; ability to sustain attention, concentrate, and exert mental control in the borderline range; and ability to process simple or routine visual material without making errors in the extremely low range. (AR 302-03.) Dr. Simpson assessed Lucero with an anxiety disorder, not otherwise specified; opiate dependence in full sustained remission; borderline intellectual functioning; insomnia; and a GAF of 55.[2] (AR 304.) Dr. Simpson concluded that "these challenges may make it difficult for [Lucero] to obtain and maintain employment." (*Id.*)

Dr. Simpson found that Lucero experienced no-to-mild limitations in the ability interact with public and to interact with coworkers; mild limitations in the ability to understand and remember very short and simple instructions and to be aware of normal hazards in the workplace; mild-to-moderate limitations in the ability to work without supervision, interact with supervisors, and adapt to changes in the workplace; and moderate limitations in the ability to understand and remember detailed or complex instructions, carry out instructions, attend and concentrate, and use public transportation or travel to unfamiliar places. (AR 305.) Dr. Simpson concluded that Lucero could manage his own benefits. (*Id.*)

---

[2] A score between fifty-one and sixty is assessed when the patient is believed to have "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." *Id.*

Beginning in June 2012, Lucero indicated to his therapist, Monique Garcia, LMSW, at First Choice Community Healthcare that he was interested in tapering off and discontinuing Suboxone use. (AR 326.) Lucero continued reporting anxiety, difficulty sleeping, and difficulty with decreasing Suboxone through October 2012. (AR 318-19; *see also* AR 320-27.)

The ALJ held a hearing on October 31, 2013, at which Lucero and a vocational expert ("VE") testified. (AR 32-52.) Lucero testified that he works for his brother one day each week repairing pallets and earns between $50 and $60 a day for this activity. (AR 35.) Lucero stated that he enjoys woodcarving, drawing, and fishing, and will spend approximately two hours at a time on these activities. (AR 40-41.)

THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on January 17, 2014. (AR 25.) At step one, the ALJ determined that Lucero has not engaged in substantial gainful activity since his application date. (AR 17.) At step two, the ALJ found that Lucero has the severe impairments of borderline intellectual functioning, polysubstance abuse in remission, and depression. (*Id.*) The ALJ also found that Lucero is obese, but that there is not medical evidence documenting complaints related to his weight; accordingly, obesity is not a severe impairment in this case. (*Id.*) The ALJ concluded that Lucero does not have an impairment or combination of impairments that meet or medically equal anything on the Listing of Impairments. (AR 17-18.) The ALJ specifically considered Listings 12.02 and 12.04, and noted that Lucero experiences mild restrictions in activities of daily living, moderate difficulties with social functioning, and moderate difficulties with regard to concentration, persistence or pace. (AR 18.)

At phase one of step four, the ALJ determined that Lucero has the RFC for work at all exertional levels, but is capable of performing simple, routine tasks with a reasoning level of

one; can have only occasional and superficial interaction with the public; and cannot perform production pace work or tandem tasks. (AR 19.) The ALJ noted that Lucero's medical records do not begin until April 19, 2011. (AR 20.) The ALJ summarized treatment records from First Choice Community Healthcare, largely revolving around Lucero's use of Suboxone to wean off of heroin. (*Id.*)

The ALJ then discussed Dr. Wynne's opinion, including Dr. Wynne's notes about Lucero's cogent presentation, that Lucero's ability to abstract was not impaired despite a lower-than-average fund of information and generally below average intelligence levels. (*Id.*) Further, the ALJ noted Dr. Wynne's finding that Lucero exhibits limited judgment and that Lucero is moderately limited in his ability to concentrate and persist at simple work tasks, could not interact well with others, could not manage his benefit payments, and would have difficulty adapting to changes in the workplace. (*Id.*) The ALJ also noted Dr. Wynne's assessment of alcohol dependence, in short-term remission; cannabis abuse; polysubstance abuse/heroin, inhalants, in remission; borderline intellectual functioning; rule-out mild mental retardation; and a GAF of 42. (*Id.*)

Next, the ALJ discussed Dr. Simpson's opinion. (*Id.*) The ALJ noted that Lucero told Dr. Simpson that he had sought healthcare services in the past, but never took prescribed medication and never returned for follow-up appointments. (*Id.*) Dr. Simpson found Lucero to be oriented, of below average intelligence, and with no apparent difficulty "communicating his thoughts, attending, or concentrating." (AR 21.) The ALJ discussed Dr. Simpson's evaluation of Lucero's mild-to-moderate memory deficits and the results of the Wechsler Adult Intelligence Scale-IV, including Dr. Simpson's evaluation that Lucero may have difficulty keeping up with his peers in a variety of situations requiring thinking and reasoning. (*Id.*) Dr. Simpson assessed an anxiety

disorder, not otherwise specified; opiate dependence in full sustained remission; borderline intellectual functioning; and a GAF of 55. (*Id.*) The ALJ discussed Dr. Simpson's finding of moderate limitations in Lucero's ability to attend and concentrate, to use public transportation or travel to unfamiliar places, and to understand, remember, and carry out detailed or complex instructions; mild-to-moderate limitations in his ability to work without supervision, to adapt to changes in the workplace, to be aware of normal hazards, and to understand and remember very short and simple instructions; and none-to-mild limitations in his ability to interact with the public and coworkers. (*Id.*)

The ALJ then summarized Lucero's hearing testimony, including Lucero's work for his brother repairing pallets. (AR 22.) The ALJ specifically noted Lucero's testimony that he spends approximately two hours at a time working on wood carvings. (*Id.*)

The ALJ concluded that the evidence of record evinced that Lucero experiences some limitations resulting from his borderline intellectual functioning and depressive disorder, but that he remains capable of working for his brother, performing independent activities of daily living, and engaging in hobbies, though he does not like to socialize. (AR 23.)

The ALJ found that Dr. Simpson's evaluation was more detailed than Dr. Wynne's and included objective medical testing that Dr. Wynne's did not include. (*Id.*) Accordingly, the ALJ gave less weight to Dr. Wynne's opinion than to Dr. Simpson's, and deferred to Dr. Simpson's opinion when the two opinions diverged. (*Id.*) The ALJ "accorded significant weight" to the state agency consultants' opinions, as they are consistent with other evidence of record. (*Id.*) Finally, the ALJ discussed her consideration of the third-party opinion evidence from Lucero's mother. (*Id.*) The ALJ found that Lucero's mother's opinion "cannot be fully credited" because it differed materially from other evidence of record. (*Id.*)

At phase two of step four, the ALJ found that Lucero has no past relevant work. (AR 24.)

Based on the VE's testimony that a person with Lucero's characteristics would be able to perform several jobs existing in significant numbers in the national economy, the ALJ determined that Lucero could work. (*Id.*) Therefore, the ALJ concluded that Lucero is not disabled pursuant to § 204.00 of the Medical-Vocational Guidelines. (AR 25.)

DISCUSSION

Lucero argues that the ALJ erred at step four by failing to properly explain the weight she assigned to the opinions of Drs. Wynne and Simpson, failing to appropriately incorporate medical opinions into the RFC, failing to adequately explain her credibility determinations, and failing to support the RFC with substantial evidence.

## I.      Medical Opinions

Lucero makes several claims of error regarding the ALJ's treatment of medical opinions. Primarily, Lucero contends that the ALJ failed to explain how much weight she afforded the opinions of Drs. Wynne and Simpson, in violation of *Mays v. Colvin*, 739 F.3d 569 (10th Cir. 2014), and 20 C.F.R. § 416.927. Within this argument Lucero embeds contentions that the ALJ failed to properly account for the consultative examiners' opinions in the RFC.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. [Sh]e must also discuss the weight [s]he assigns to such opinions." *Mays v. Colvin*, 739 F.3d at 578 (10th Cir. 2014) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)). "[T]he ALJ's findings must be sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight." *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (quotation omitted). It is undisputed that the record contains no medical opinions or statements from Lucero's treating physicians.

The factors in 20 C.F.R. § 416.927(c) apply in determining the weight to be accorded to non-treating physicians. These factors include: 1) the nature and extent of the treatment relationship, 2) the degree to which the opinion is supported by other evidence of record, 3) consistency between the opinion and the record as a whole, 4) whether the physician is a specialist in the area upon which an opinion is rendered, and 5) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c).

### A.  Dr. Simpson

With regard to Dr. Simpson's opinion, Lucero contends that the ALJ did not specify how much weight she afforded it and did not address limitations identified by Dr. Simpson, including moderate limitations on Lucero's ability to attend and concentrate or to carry out instructions. Dr. Simpson's evaluation found moderate limitations in Lucero's ability to understand and remember detailed or complex instructions, mild limitations in his ability to understand and remember very short and simple instructions, and moderate limitations in his ability to carry out instructions. (AR 305.) The ALJ limited Lucero to "performing simple, routine tasks with a reasoning level of 1; . . . only occasional and superficial interaction with the public; and . . . [no] production pace work or tandem tasks." (AR 19.)

The ALJ stated that, while she accorded Dr. Wynne's opinion "significant weight," she accorded more weight to Dr. Simpson's opinion. (AR 23.) She explained that Dr. Simpson's opinion was given more weight because Dr. Simpson used objective testing and because Lucero was not actively using substances when interviewed by Dr. Simpson. (*Id.*) While the ALJ could certainly have been clearer in describing the weight she assigned to Dr. Simpson's opinion, it is plain from her discussion that she accorded the opinion great weight. Furthermore, the ALJ incorporated Dr. Simpson's opinion into the RFC. *See Mays v. Colvin*, 739 F.3d at 578-79 ("an

ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity").

While Lucero is correct that a moderate limitation is more than no limitation, *see Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), the SSA defines "moderately limited" as a "conclusion that the individual's capacity to perform the activity is impaired," but is not a conclusion that "the individual cannot usually perform or sustain the activity." *See* Program Operations Manual System ("POMS") No. DI 24510.063 B.2-3 (Oct. 14, 2010), *available at* https://policy.ssa.gov/poms.nsf/lnx/0424510063.[3] The ALJ accounted for the moderate limitation on carrying out instructions, in light of the differing limitations in Lucero's ability to understand and remember complex as opposed to short and simple instructions, by limiting Lucero to "simple, routine tasks with a reasoning level of 1." The ALJ imposed a limitation on Lucero's ability to carry out instructions, but cabined that limitation in light of Lucero's other abilities and limitations understanding and remembering instructions. The RFC appropriately incorporates Dr. Simpson's moderate limitation on Lucero's ability to carry out instructions.

Lucero also contends that the ALJ failed to account for Dr. Simpson's moderate limitation on Lucero's ability to attend and concentrate. Lucero argues that this limitation, combined with others, "requires more than a limitation to simple work." (Doc. 19 at 16.) Lucero cites to *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012), for this proposition. However, the facts in *Chapo* differ significantly: the evaluation at issue in that case found only moderate-to-marked limitations and marked-to-extreme limitations on the claimant's mental abilities, particularly her ability to attend and concentrate. *See id.* at 1289-90. Furthermore, the ALJ in *Chapo* did not include a restriction to "simple" work in his decision. *Id.* at 1290 n.3.

---

[3] POMS are not legally binding, but are generally given deference. *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999).

Unlike the claimant in *Chapo*, Lucero has a moderate limitation in his ability to attend and concentrate and was limited to "simple, routine tasks with a reasoning level of 1." A reasoning level of one would require Lucero to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DICTIONARY OF OCCUPATIONAL TITLES, Appendix C – Components of the Definition Trailer (4th Ed. 1991), 1991 WL 688702. The ALJ's limitation to reasoning level 1 sufficiently accounts for Lucero's impairments.

Next, Lucero notes that Dr. Simpson found that he may have a hard time keeping up with his peers in myriad situations that require thinking and reasoning, and contends that this finding was not accounted for by the ALJ. However, the ALJ limited Lucero to occupations with reasoning level 1. As explained above, reasoning level 1 does not require the individual to do anything more than carry out very simple instructions and deal with standardized situations. Additionally, the ALJ limited Lucero to work that is not at production pace. The ALJ sufficiently accounted for this finding.

Lucero then challenges the ALJ's alleged failure to consider Dr. Simpson's finding that insomnia and anxiety "may make it difficult for [Lucero] to obtain and maintain employment." (Doc. 19 at 17 (quoting AR 304).) However, "[a] statement by a medical source that [a claimant is] . . . 'unable to work'" is on an issue reserved to the Commissioner and is not entitled to any special deference. 20 C.F.R. § 416.927(d). The ALJ did not err by failing to address this statement.

Lucero contends that the ALJ failed to explain why she adopted some, but not all, of Dr. Simpson's proposed limitations, in violation of *Haga* and Social Security Ruling ("SSR") 96-8p,

15

1996 WL 374184 (July 2, 1996), because the ALJ did not include a limitation on Lucero's ability to respond appropriately to supervision.[4] Lucero cites Dr. Simpson's finding of mild-to-moderate limitations in the ability to respond appropriately to supervision. As noted above, a "moderate" limitation is a finding that the individual has impairment in that area. A mild limitation is less severe than a moderate limitation. A finding that Lucero suffers from some impairment in his ability to respond appropriately to supervision need not necessarily translate to a work-related functional limitation. *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished). This is not error.

Finally, Lucero contends that that ALJ was required to explain why she rejected some of Dr. Simpson's findings and adopted others. This argument is without merit because, as discussed above, the ALJ accounted for all of Dr. Simpson's findings in her RFC.

The ALJ did not err in her treatment of Dr. Simpson's opinion.

### B.  Dr. Wynne

Lucero also contends that the ALJ failed to adequately explain how much weight she assigned to Dr. Wynne's opinion. Specifically, Lucero argues that the ALJ's assessment of weight to Dr. Wynne's opinion is confusing because, in many regards, Dr. Wynne's opinion comports with Dr. Simpson's opinion. The ALJ explained that she gave more weight to Dr. Simpson's opinion because he used objective testing and because Lucero was still using drugs when Dr. Wynne interviewed him. This is a reasonable explanation as to why the ALJ gave more weight to Dr. Simpson's opinion. Contrary to Lucero's assertions, the ALJ did not wholly

---

[4] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

discount Dr. Wynne's opinion and she provided supportable reasons for the weight she assigned the opinion.

Lucero notes that Dr. Wynne found him to "have difficulty adapting to changes in the workplace," and that Dr. Simpson found this limitation to be mild-to-moderate. (AR 270, 305.) As with several limitations imposed by Dr. Simpson, the ALJ properly accounted for this limitation by limiting Lucero to work with reasoning level 1 which, by its nature, does not involve significant changes in the workplace.

The ALJ did not err in her treatment of Dr. Wynne's opinion.

## II. Credibility Determination

Next, Lucero argues that the ALJ failed to make proper credibility determinations with respect to Lucero and his mother. Specifically, Lucero alleges that the ALJ made a "boilerplate, unsupported credibility determination"; failed to link the credibility determination to evidence of record, rendering the credibility determination incomplete; did not use appropriate factors when making credibility determinations; and made a medical finding in the guise of a credibility determination. (Doc. 19 at 25-26.)

### A. Lucero's Credibility

Lucero objects to the following passage from the ALJ's decision as impermissible boilerplate language: "[T]he claimant's impairments might be expected to cause some of the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 20; Doc. 19 at 25.) While the Tenth Circuit agrees that pure boilerplate language in credibility determinations denies the reviewing court a meaningful opportunity to understand the decision, *Hardman v. Barnhart*, 362 F.3d 676, 679 (2004), the ALJ in this case did not rest her

17

credibility determination on boilerplate alone (*see* AR 19-24). The ALJ's use of boilerplate language does not, in and of itself, cause the ALJ's decision to run afoul of the requirements for credibility determinations elucidated in SSR 96-7p, 1996 WL 374186 (July 2, 1996), or by the Tenth Circuit.

"Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal citations and quotations omitted)). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

Here, the ALJ thoroughly discussed the evidence of record, Lucero's testimony, and Lucero's reports to the agency. (*See* AR 19-24.) While the ALJ did not specifically state which piece of evidence caused her to discount which portion of Lucero's statements, she is not required to do so. The ALJ sufficiently discussed evidence of record that contradicted Lucero's statements regarding persistence and pace and, therefore, sufficiently supported her credibility determination with substantial evidence. (*See, e.g.*, AR 23 (discussing the objective evidence of record, Lucero's limitations, and the ALJ's findings).)

Next, Lucero challenges the ALJ's statement that Lucero's anxiety-related symptoms appear related to the tapering of Suboxone and will likely diminish over time. Lucero, citing *Kemp v. Bowen*, 816 F.2d 1469 (10th Cir. 1987), contends that this is a medical finding which the ALJ is not qualified to make. In *Kemp*, the ALJ rejected the opinion of a treating physician without explanation and without contrary evidence to support the rejection. *See id.* at 1476. Unlike *Kemp*, Lucero's own statements suggest that his anxiety is related to Suboxone tapering

and will, indeed, diminish overtime. In April 2011, Lucero reported to First Choice Community Healthcare that he had no history of anxiety (AR 258); after starting Suboxone treatment, he began reporting anxiety-related symptoms to DDS in June 2011 (*see* AR 189, 195) and to medical professionals in August 2011 (*see* AR 282). Lucero testified that he gets anxious about tapering his Suboxone use, but that his symptoms go away after a while or become tolerable. (AR 45.) The ALJ's statement that Lucero's anxiety-related symptoms appear related to tapering Suboxone are not a medical finding which she is unqualified to make, but rather a rephrasing of Lucero's explanation of his anxiety.

Finally, Lucero argues that the ALJ failed to use appropriate factors in making her credibility determination, in violation of *Kepler* and *Huston*. *Kepler* is not helpful to Lucero: the ALJ is required to provide reasons for a credibility determination, but there are no specific factors that the ALJ is required to discuss. *Huston* is equally unavailing. As I explained above, the ALJ thoroughly discussed the record and highlighted medical evidence that contradicted Lucero's complaints. The ALJ did not err in making her credibility determination with respect to Lucero.

### B.  Lucero's Mother

Lucero contends that the ALJ improperly discounted the third-party report from Lucero's mother, in violation of SSR 85-16, 1985 WL 56855 (Jan. 1, 1985). Lucero argues that the ALJ improperly discounted Ms. Lucero's report based on the family connection, despite the fact that SSR 85-16 directs ALJ to consider third-party reports—including those from family members—when making RFC determinations for mental impairments. *Id.* at *4. While the ALJ did note that Ms. Lucero was probably supportive of Lucero's quest for benefits, she also stated that Ms. Lucero's "opinions depart substantially from the other evidence of record and cannot be fully

credited." (AR 23.) The ALJ is not required to conduct the same credibility analysis for third-party reports as for claimant reports. Nonetheless, Ms. Lucero's statements contradict the same objective evidence discussed above. The ALJ did not err in considering Ms. Lucero's third-party statement.

### III.     RFC Supported by Substantial Evidence and the Law

Finally, Lucero argues that the ALJ failed to support her RFC determination with substantial evidence and to explain that determination, as required by SSR 96-8p. To the extent that Lucero repeats his arguments related to the ALJ's treatment of medical opinions, I have already explained that the ALJ did not err in her treatment of Dr. Wynne's or Dr. Simpson's opinions.

First, Lucero alleges that non-examining state agency physician Dr. Gucker submitted an internally inconsistent mental RFC assessment. (Doc. 19 at 21-22.) Lucero argues that the ALJ relied on Dr. Gucker's opinion as substantial evidence to support the RFC, but that when a consultant's opinion is internally inconsistent it "cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished). Even if the ALJ failed to consider Dr. Gucker's opinion entirely, the ALJ provided more than enough factual support in the record to render her RFC supported by substantial evidence. *See U.S. Cellular Tel. of Greater Tulsa, L.L.C.*, 340 F.3d at 1133. Indeed, even if Dr. Gucker's opinion was contrary to Dr. Simpson's and Dr. Wynne's opinions, the RFC would still be supported by substantial evidence because nonexamining physician's opinions are entitled to less weight than the opinions of examining physicians.

Next, Lucero contends that the ALJ failed to conduct a proper RFC assessment with regard to his ability to work eight hours a day, five days a week. The ALJ is not required to

specifically find that Lucero could perform work for a regular work week: that finding is included in Lucero's ability to work at all. Lucero also argues that the ALJ failed to assess his ability to work at a competitive pace, but this is incorrect: the ALJ determined that Lucero could not perform production pace work, but could perform simple tasks with reasoning level one at an employable speed. This is sufficient.

Finally, Lucero argues that the ALJ failed to support the RFC with substantial evidence. As explained above, and thoroughly discussed in the ALJ's decision, this is incorrect. The ALJ covered the entire record in her decision, appropriately accounted for medical opinion evidence, and made reasonable credibility determinations. The ALJ's RFC is supported by substantial evidence and is not contrary to law. The ALJ did not err.

## CONCLUSION

The ALJ adequately explained the weight she assigned to medical opinions, her credibility determinations and the weight assigned to third-party statements, and the factual support for the RFC. The ALJ did not commit reversible error. Therefore, I deny Lucero's motion to reverse and remand, and affirm the decision of the Commissioner.


_____

William P. Lynch
United States Magistrate Judge


A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.